UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Target Corporation, | Case No. 18-cv-3305 (WMW/SER) |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO TRANSFER VENUE** |
| Seaman Corporation, | |
| Defendant. | |

Before the Court is Defendant Seaman Corporation's motion to transfer this action to the Northern District of Ohio.  (Dkt. 18.)  For the reasons addressed below, Seaman's motion is denied.

## BACKGROUND

This dispute arises from Plaintiff Target Corporation's dissatisfaction with roof membranes used in the construction of Target stores throughout the 2000s.  Target initiated this lawsuit on December 3, 2018, alleging that the roof membranes supplied by Seaman failed to perform to the promised standards.  In its amended complaint, Target asserts four causes of action: breach of express warranty, fraud, violation of Ohio's Deceptive Trade Practices Act, and violation of Minnesota's Deceptive Trade Practices Act.

Also on December 3, 2018, Target filed a complaint against Seaman in the Northern District of Ohio (the Ohio litigation).  In the Ohio litigation, Target alleges that Seaman's roof membranes, used in the construction of Target stores in 29 states, failed to perform as promised.  The Ohio litigation does not implicate any Minnesota store locations.  The

complaint in the Ohio litigation includes the same causes of action as those in the District of Minnesota litigation, except that the Ohio litigation does not include a claim for violation of Minnesota's Deceptive Trade Practices Act.

Seaman filed the pending motion to transfer venue from the District of Minnesota to the Northern District of Ohio.  Target opposes this motion.

## ANALYSIS

Seaman seeks to transfer this case to the Northern District of Ohio, pursuant to 28 U.S.C. § 1404(a).  In opposition to the motion, Target argues that Seaman has not met its burden of proof establishing that transfer is warranted.

A district court may transfer a civil action to another district where the action may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The decision whether to transfer under Section 1404(a) involves a two-step inquiry for district courts.  *Valspar Corp. v. Kronos Worldwide, Inc.*, 50 F. Supp. 3d 1152, 1155 (D. Minn. 2014).  First, the court must determine "whether the action might have been brought in the proposed transferee district."  *Id.* (internal quotation marks omitted).  Neither party disputes that this action could have been brought in the Northern District of Ohio.

Second, the court must determine whether transfer would be convenient for the parties, convenient for the witnesses, and in the interests of justice.  *Id.*  With respect to the interests-of-justice factor, district courts consider "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues,

and (7) the advantages of having a local court determine local law."[1] *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 888 (D. Minn. 2015) (internal quotation marks omitted).

A defendant seeking transfer bears a "heavy burden" of proof to establish that transfer is warranted. *Id.* at 884. This burden requires the defendant to show "that the balance of factors strongly favors" the defendant and not merely "that the factors are evenly balanced or weigh only slightly in favor of transfer." *Id.* (internal quotation marks omitted).

## I.      Convenience for the Parties

Seaman argues that transfer to the Northern District of Ohio would be convenient for both parties in light of the pending Ohio litigation.

There is a strong presumption in favor of a plaintiff's choice of forum, particularly when the plaintiff resides in the district in which it filed the complaint. *Travel Tags, Inc. v. Performance Printing Corp.*, 636 F. Supp. 2d 833, 836 (D. Minn. 2007). A defendant can overcome this presumption by showing that the transferee district is *more* convenient

---

[1]      In the presence of a mandatory forum-selection clause, district courts apply a different analysis. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 62-66 (2013). Seaman presents to the Court a clause from a credit agreement allegedly entered into between Seaman and Target. The clause provides, in relevant part, "Buyer and the Seller agree to submit to the jurisdiction of the appropriate state or federal court within Ohio for purpose of resolving any dispute or claim arising in connection with said transaction." But, assuming without deciding that this clause relates to venue and not merely jurisdiction, this clause is not a mandatory forum-selection clause. *See Fla. State Bd. of Admin. V. Law Eng'g & Envtl. Servs., Inc.*, 262 F. Supp. 2d 1004, 1009 (D. Minn. 2003) (explaining that a forum-selection clause is presumed to be permissive unless the clause contains "specific language indicating the parties' intent to make jurisdiction exclusive"). As such, the Court applies the standard Section 1404(a) analysis.

than the current forum. *See id.* A defendant's motion to transfer should not be granted "if the effect is simply to shift the inconvenience to the party resisting the transfer." *Id.* (internal quotation marks omitted). And "[w]hen each party prefers to litigate in its home forum and the moving party has not presented convincing evidence that its financial position makes it incapable of litigating in Minnesota, this factor is neutral." *My Pillow, Inc. v. LMP Worldwide, Inc.*, 331 F. Supp. 3d 920, 927 (D. Minn. 2018) (internal quotation marks omitted).

Seaman asserts that the Northern District of Ohio is a more convenient venue than the District of Minnesota because Target already must spend a significant amount of time in the Northern District of Ohio for the pending Ohio litigation. Although the Northern District of Ohio may be a convenient location, Seaman does not establish that it is *more* convenient than the District of Minnesota. Minnesota is the location of both Target's headquarters and the damaged roofs at issue. Although Target likely will spend a significant amount of time in Ohio, Seaman, conversely, likely will spend time in Minnesota deposing witnesses, even if the action is transferred to the Northern District of Ohio.[2]

Next, Seaman argues that Target cannot claim that Ohio is inconvenient because Target chose that forum for the resolution of its other claims against Seaman. But the fact that Target has already filed a complaint in the Northern District of Ohio does not bear on

---

[2]     Target asserts, and Seaman does not dispute, that numerous witnesses reside or regularly transact business in Minnesota. Rule 45(c)(1)(A), Fed. R. Civ. P., provides that a party may subpoena a witness to attend a deposition within 100 miles of where the witness resides or regularly transacts business.

the relative convenience between Ohio and Minnesota. Transferring this case to the Northern District of Ohio simply would "shift the inconvenience to the party resisting the transfer." *Travel Tags*, 636 F. Supp. 2d at 836.

Accordingly, this factor does not favor transfer.

## II. Convenience of the Witnesses

Seaman next contends that transferring this action to the Northern District of Ohio would increase the convenience for the witnesses.

A defendant seeking transfer "must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1122 (D. Minn. 1999). After such a showing, the district court can evaluate the materiality of the anticipated witnesses' testimony and the accessibility of the forum. *Ibis Tek*, 124 F. Supp. 3d at 885-86 (clarifying that this inquiry focuses primarily on non-party witnesses because "it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum"). When a defendant makes only general allegations of witness inconvenience or establishes that a forum is only slightly inconvenient, a district court should not transfer the action. *See id.* at 887-88; *Savage v. Kaiser Motors Corp.*, 116 F. Supp. 433, 434 (D. Minn. 1953).

Seaman specifies neither the essential witnesses to be called nor the content of the expected testimony. Instead, Seaman argues that the "dearth of factual allegations in the Amended Complaint regarding the who, what, when and where of the alleged discussions between Target and Seaman employees makes it difficult for Seaman to identify potential

witnesses." But Seaman admits meeting with representatives of Target as described in the Amended Complaint. Seaman's inability to specify *any* potential witnesses is, therefore, unpersuasive.[3] And Seaman's assertion that many of its employee-witnesses are located in Ohio falls short, as the convenience-for-witnesses factor focuses primarily on *non-party* witnesses. *See Ibis Tek*, 124 F. Supp. 3d at 885-86.

Notwithstanding its failure to specify witnesses, Seaman contends that it would be more convenient to transfer this action to the Northern District of Ohio because witnesses will already be required to travel there for the pending Ohio litigation. But Target employed different contractors to work on the roofs of its various store locations. Seaman does not identify which, if any, of the third-party contractors involved in the Minnesota action are also involved in the Ohio litigation.

Because Seaman has presented only general assertions of inconvenience of the witnesses, this factor does not favor transfer. *See id.* at 887.

### III.    Interests of Justice

Finally, Seaman contends that it is in the interests of justice to transfer this action to the Northern District of Ohio. Each of the interests-of-justice subfactors is addressed, in turn.

---

[3]     Although not required, Target identifies several contractors that it anticipates will be essential witnesses. Target asserts that the "vast majority" of these contractors either are located in Minnesota or regularly conduct business in Minnesota.

### A.    Judicial Economy

Seaman argues that the judicial-economy subfactor favors transfer because, if the case is transferred, Seaman could move to consolidate the two pending lawsuits.

The existence of pending, related litigation is a relevant consideration to judicial economy.  *See Birmingham Fire Ins. Co. of Pa. v. Up North Plastics, Inc.*, No. 04-cv-0021, 2004 WL 838169, at *4 (D. Minn. Apr. 19, 2004) (citing *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 739 (1st Cir. 1977)); *Ahlstrom v. Clarent Corp.*, No. 02-cv-0780, 2002 WL 31856386, at *6 (D. Minn. Dec. 19, 2002) (same).  Courts aim to avoid duplicative circumstances in which "multiple judges will consider the same questions, review the same record, read the same briefs, and write opinions resolving the same issues."  *Hoban v. U.S. Food & Drug Admin.*, No. 18-cv-0269, 2018 WL 3122341, at *3 (D. Minn. Jun. 26, 2018).  And although a district court "should consider the likelihood that consolidation will actually occur following transfer," consolidation need not be certain.  *See Ahlstrom*, 2002 WL 31856386, at *6 (internal quotation marks omitted) (concluding that consolidation was likely because the lawsuits involved the same defendants and core allegations, and plaintiffs had offered to coordinate discovery "so as to ensure no duplication").

Seaman contends that, in light of the "virtually identical" Ohio litigation, transferring this case to the Northern District of Ohio would allow for the possibility of consolidation.  As in *Ahlstrom*, the Minnesota and Ohio actions involve the same parties and same core allegations.  The complaints contain identical claims for breach of express warranty, fraud, and violation of the Ohio Deceptive Trade Practices Act.  And Target offered to conduct joint depositions, further underscoring the similarity of the actions.  In

opposition, Target identifies several claims and defenses that it contends are unique to the Minnesota action and that may weigh against consolidation. Although consolidation is not guaranteed here, the Court need not reach this level of certainty to determine that judicial economy favors transfer. *See id.* The relation between the Ohio and Minnesota litigation establishes a likelihood of consolidation.

For these reasons, the judicial-economy subfactor favors transferring this action to the Northern District of Ohio.

### B.      Plaintiff's Choice of Forum

Seaman characterizes the choice-of-forum subfactor as neutral because, despite Target's choice to litigate *this* action in the District of Minnesota, Target chose to litigate the other action in the Northern District of Ohio. A plaintiff's choice of forum generally prevails, "unless the balance as to convenience of parties and witnesses is strongly in favor of defendant." *Savage*, 116 F. Supp. at 434. And the plaintiff's choice is particularly strong when, as here, the plaintiff is located in the forum state and the underlying claims are connected to the forum state. *See Ahlstrom*, 2002 WL 31856386, at *5; *cf. Valspar Corp.*, 50 F. Supp. 3d at 1157. Seaman provides no legal support for its contention that Target's choice of forum in a different action undermines the strength of Target's forum preference in *this* matter.

Accordingly, Target's preference to litigate in the District of Minnesota disfavors transfer of this action.

## C. Comparative Costs to the Parties of Litigating in Each Forum

Transferring this case to the Northern District of Ohio would be more cost-effective for each party, Seaman argues, because both parties already will be producing discovery and witnesses in that district.

When comparing the costs to each party, courts consider the relative costs of discovery, obtaining local counsel, and other litigation-related expenses. *See Valspar Corp.*, 50 F. Supp. 3d at 1157. *But see My Pillow*, 331 F. Supp. 3d at 928 (giving little weight to the costs of document production due to advancements in technology). When a transfer would merely shift the costs from one party to another, courts disfavor the transfer. *See Ibis Tek*, 124 F. Supp. 3d at 888.

Seaman has already obtained local counsel in Minnesota. Its document production costs are insignificant for the purpose of this analysis. *See My Pillow*, 331 F. Supp. 3d at 928. And, regardless of whether this case is in Minnesota or Ohio, Seaman likely will have to attend multiple depositions in Minnesota.[4]

For these reasons, the relative costs to Seaman and Target are not so disparate as to provide a basis to transfer this action.

## D. Each Party's Ability to Enforce a Judgment

Seaman asserts that this subfactor is neutral. A defendant's lack of assets in the existing forum favors transfer under this subfactor. *Ibis Tek*, 124 F. Supp. 3d at 889. But this subfactor has less weight when the contemplated transfer is to a sister state, not a

---

[4] *See supra* note 2.

foreign country. *See Ahlstrom*, 2002 WL 31856386, at *7 ("The ability to enforce a judgment has less significance in a § 1404(a) transfer analysis than in a forum non conveniens analysis, where the enforcement of a judgment issued by a foreign country could present serious problems."); *see also Travel Tags*, 636 F. Supp. 2d at 838 (finding that this subfactor did not favor transfer because the court did not anticipate any enforcement difficulties as between Minnesota and Texas).

Although Seaman has no physical presence or assets in Minnesota, the Court does not anticipate any material obstacles to enforcement as between the Northern District of Ohio and the District of Minnesota. This is a neutral subfactor.

### E.     Obstacles to a Fair Trial

Seaman asserts that this subfactor is also neutral, as there is no indication that Target would receive an unfair trial in Ohio. But Seaman's argument reverses the analysis. The relevant consideration is whether Seaman faces any obstacles to a fair trial in the District of Minnesota, *not* whether Target would receive a fair trial in the Northern District of Ohio. *See, e.g.*, *Luckey v. Alside, Inc.*, No. 15-cv-2512, 2016 WL 1559569, at *6 (D. Minn. Apr. 18, 2016) ("[T]he Northern District of Ohio is fully capable of handling this action fairly and impartially. But again, this factor does not favor transfer because Defendants have presented no argument suggesting that the District of Minnesota is not just as capable."). Because Seaman fails to identify any reason why it would not receive a fair trial in Minnesota, this factor does not favor transfer.

## F. Conflict of Law

Seaman contends that the Ohio litigation already implicates many states' laws and adding Minnesota laws to the matter will not impose an additional burden in the Ohio litigation.

Federal district courts routinely apply laws from other states. *Klatte v. Buckman, Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 957 (D. Minn. 2014). And although there is a risk of inconsistent rulings when related matters are heard across multiple district courts, judicial tools exist to mitigate such a risk. For example, courts can issue stays or apply doctrines such as issue preclusion. *See Minn. Supply Co. v. Mitsubishi Caterpillar Forklift Am. Inc.*, 822 F. Supp. 2d 896, 913 (D. Minn. 2011).

Here, a transfer may require the Northern District of Ohio to decide issues of Minnesota law. But, given the frequency of this type of scenario in federal litigation, this fact is entitled to little weight. On the other hand, there is a risk of inconsistent rulings if the case remains in the District of Minnesota. Yet this risk is lessened by the judicial tools described above.[5]

On balance, the conflict-of-laws subfactor is neutral.

---

[5] The parties dispute what state law governs the claims in this action. The credit agreement that Seaman presents to the Court contains an Ohio choice-of-law provision. Target contends that the choice-of-law provision is not valid. But regardless of the provision's validity, the conflict-of-law subfactor is neutral as district courts routinely resolve disputes while applying other states' laws and there are readily available judicial tools that can lessen the risk of inconsistent rulings between multiple pending actions.

### G. Advantages of Having Local Counsel Determine Questions of Local Law

Seaman argues that, if Minnesota law governs Target's claims, this subfactor is neutral because federal district courts are capable of applying a different state's law. Alternatively, Seaman argues that if the Ohio choice-of-law provision in the credit application between Seaman and Target is controlling, this subfactor favors transfer.

It is generally preferable for local courts to consider local issues of law, particularly when there are novel legal questions at issue. *My Pillow*, 331 F. Supp. 3d at 929. Yet this factor is routinely afforded little weight because of the frequency with which federal district courts apply other states' laws. *See Klatte*, 995 F. Supp. 2d at 957. Although a relevant consideration, this subfactor does not weigh so strongly in favor of either Target or Seaman that it materially affects the balance of the interest-of-justice subfactors.

### IV. Conclusion

For the reasons addressed above, Seaman has not met its heavy burden to establish that transfer is warranted. *See Ibis Tek*, 124 F. Supp. 3d at 884. The first two factors, convenience for the parties and convenience for the witnesses, favor keeping this case in Minnesota. And the interests-of-justice subfactors do not overcome the weight of the first two factors. Because Seaman has not shown that the balance of factors strongly favors transfer, the Court denies Seaman's motion to transfer.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Seaman Corporation's motion to transfer venue, (Dkt. 18), is **DENIED**.

Dated:  August 15, 2019                                     s/Wilhelmina M. Wright
                                                                             Wilhelmina M. Wright
                                                                             United States District Judge